```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

HOWARD L. LIPPTON                *         CIVIL ACTION

VERSUS                           *         NO: 07-0329

UNITED STATES DEPARTMENT OF      *         SECTION: "D"(5)
JUSTICE, ET AL


### ORDER AND REASONS

Before the court are the **Motion for Summary Judgment (Doc. No. 12)** filed by Plaintiff, Howard L. Lippton, and the **Cross-Motion for Summary Judgment (Doc. No. 20)**, filed by Defendants, the United States Department of Justice, Executive Office for the United States Attorneys (EOUSA), and the Federal Bureau of Investigation (FBI).  On April 16, 2008, the court heard oral argument from counsel, and thereafter the court ordered the parties to file supplemental memoranda. (*See* Orders, Docs. Nos. 34, 40 & 43).  The court also ordered the FBI to file a more detailed *Vaughn* Index and the EOUSA to file a supplemental Declaration regarding sealed documents. (*See* Order, Doc. No. 43).  Now, having considered the memoranda and argument of counsel, the record, and the applicable law, the court finds that the Plaintiff's Motion for Summary

Judgment should be denied, and the Defendants' Cross-Motion for Summary Judgment should be granted.

## A. Have the Plaintiff's FOIA requests been satisfied?

## "Yes."

This case is brought pursuant to the a Freedom of Information Act (FOIA), 5 U.S.C. §522. As set forth in Plaintiff's Complaint, the factual background to this suit is as follows: on February 6, 2002, Plaintiff pled guilty to one count of health care fraud, in violation of 18 U.S.C. §1347; on June 19, 2002, Plaintiff was sentenced to an 18-month term of imprisonment and two years of supervised release; Plaintiff has completed his term of imprisonment and was discharged from supervised release on November 3, 2005. (Complaint at ¶¶7-9).

On June 4, 2003, Plaintiff filed FOIA requests with the FBI, and Department of Justice (DOJ), seeking reports, investigative files, surveillance records, interviews and other materials related to his investigation and prosecution. (*Id*. at ¶¶10, 18). Thereafter, Plaintiff filed appeals with the DOJ Office of Information and Privacy regarding releases made by the FBI and the EOUSA. (*Id.* ¶¶13-20).

In his instant FOIA Complaint (filed on January 16, 2007), Plaintiff claims that the EOUSA violated the FOIA (at 5 U.S.C.

§§552(a)(3)(A) and 552(a)(6)(A)) by failing to promptly make available the records sought by Plaintiff's request. (*See* Complaint, Count 1, ¶¶23-25).[1] Plaintiff also claims that the FBI and EOUSA violated FOIA (at 5 U.S.C. §552(a) and applicable regulations promulgated thereunder) by failing to release records sought by the Plaintiff's requests. (*See* Complaint, Count 2, ¶¶26-28). Finally, Plaintiff seeks reasonable costs and attorney's fees pursuant to 5 U.S.C. §552(a)(4)(E). (*See* Complaint at Prayer).

In support of their Cross Motion for Summary Judgment (Doc. No. 20, filed on December 28, 2007), Defendants have submitted numerous exhibits, including documents disclosed by Defendants in response to Plaintiff's FOIA requests, and Declarations explaining why other documents were not disclosed, either through exemption or otherwise. These Declarations include the following:

> (1) the **Declaration of David M. Hardy**, Section Chief of the Record/Information Dissemination Section, Records management Division, at the Federal Bureau of Investigation Headquarters, Washington, D.C. (Defendants' Ex. 1 attached to original memorandum

---

[1] According to Plaintiff, the EOUSA responded to Plaintiff's June 4, 2003, FOIA request to the Department of Justice on February 10, 2005. On February 15, 2005, Plaintiff appealed to the DOJ's Office of Information and Privacy regarding the EOUSA's release. On November 13, 2006, the Office of Information and Privacy remanded Plaintiff's appeal to the EOUSA for further processing of responsive records. As of the filing of the instant Complaint, Plaintiff had not received further response from the EOUSA. (Complaint at ¶¶18-22).

        in support of Motion for Summary Judgment);

(2)    the **Declaration of Amanda A. Michanczyk**, Acting FOIA/Privacy Officer, FinCen (Defendants' Ex. 2 attached to original memorandum in support of Motion for Summary Judgment);

(3)    the **Declaration of Karen M. Finnegan**, Attorney Advisor in the EOUSA ((Defendants' Ex. 3 attached to original memorandum in support of Motion for Summary Judgment);

(4)    the Second Declaration of **David M. Hardy** (Doc. No. 44-3); and

(5)    the Declaration of **Sherrel E. Taylor**, Paralegal Specialist for the Civil Division, United States Attorney's Office for the Eastern District of New Orleans (Doc. No. 44-2).

In Plaintiff's initial Opposition to the Government's Motion for Summary Judgment, Plaintiff argued:

> Although Dr. Lippton has not received an explanation for the discrepancies in the page numbers, **he has received virtually everything else he requested.** If Dr. Lippton had not filed this lawsuit, he may have never received this information, to which he is fully entitled by law.

4

(*See* Plaintiff's Opp., Doc. No. 22, p. 7, emphasis added).[2]

Plaintiff earlier argued in his Opposition, on pp. 5-6:

> On September 30, 2003, the FBI notified Plaintiff that it located 1160 pages related to his request. However, in March and May 2005, the FBI reviewed only 964 pages and released 747. The Government has provided no explanation as to why it initially located 1160 pages but then reviewed only 964.
>
> Further, on November 20, 2007, the FBI notified Plaintiff that it had processed an additional 1,215 documents and released an additional 828.
>
> The FBI claims that it has now reviewed 2,183 pages but has never provided an explanation as to why this number does not equal to the sum of the documents suggested in the individual responses.

(*Id.* at pp. 5-6).

At oral argument on April 16, 2008, the purported page number discrepancy was addressed, and counsel for Plaintiff was satisfied with the explanation given by counsel for the Defendants. However, the following two issues were also raised by Plaintiff's counsel at oral argument:

(1) whether or not the court should review *in camera* documents the FBI purportedly withheld from

---

[2] The court notes that according to the Docket Sheet in this matter, Plaintiff's Opposition (Doc. No. 22) was deemed deficient because a Statement of Material Facts was not provided, and Plaintiff did not re-file his Opposition to correct this deficiency.

5

>>production;³ and

(2) whether or not sealed documents (referenced in ¶71 of the Finnegan Declaration (attached as an Exhibit to the Defendants' Motion for Summary Judgment) are subject to release under a FOIA request.⁴

Following oral argument, the court had the parties brief these issues. (*See* Order, Doc. No. 34).

**(1) *In camera* review of documents withheld by the FBI or *Vaughn* index of documents withheld by the FBI?**

In Plaintiff's supplemental brief, Plaintiff submits that "[i]n responding to plaintiff's FOIA request, the FBI withheld 217 pages in full. However, the FBI has not provided the plaintiff with any description of what these documents are or the information they contain." (*See* Plaintiff's Post-Hearing Memo., Doc. No. 35, p. 1). Plaintiff then suggests that "instead of conducting an *in camera* review, the Court should order the FBI to prepare a *Vaughn* index similar to the index provided by Karen M. Finnegan for the documents withheld by the EOUSA." (*Id*. at p. 2). The court agreed

---

³ At oral argument, counsel for Plaintiff submitted that in the Hardy Declaration (attached an an Exhibit to the Defendant's Motion for Summary Judgment), justification for withholding documents is given but the identity of any withheld document is not given. Counsel for Plaintiff suggested an *in camera* inspection of documents purportedly withheld in full, but counsel also submitted that a more comprehensive or specific *Vaughn* Index may resolve Plaintiff's concerns regarding withheld documents without the need for an *in camera* inspection.

⁴ At oral argument, counsel for Defendants submitted that these sealed documents were sealed documents from Plaintiff's underlying criminal case. The court notes that the Finnegan Declaration (at ¶71) does not specifically identify that the sealed records are from Plaintiff's underlying criminal case.

6

with Plaintiff and so ordered the FBI to submit more detailed *Vaughn* Index. (*See* Order, Doc. No. 43).

**(2) Sealed records reference in the Finnegan Declaration**

Paragraph 71 of the Finnegan Declaration states:

### SEALED DOCUMENTS

> 71.)   EOUSA advised Dr. Lippton in its February 10, 2005, response in request number 03-3927 that some of the records responsive to his request were sealed. In the preparation of this declaration, the USAO LAE requested these records from the Federal Records Center and was advised that the records that were originally sealed in 2005 cannot be located at this time. In addition, the USAO LAE conducted a search of its files and could not locate the sealed documents.

(*See* Finnegan Declaration at ¶71, copy of which is attached to Plaintiff's Post-Hearing Memo., Doc. No. 35).

Plaintiff however wanted an explanation of what these sealed documents are. At oral argument, counsel for the Defendants represented that these documents pertain to Plaintiff's underlying criminal case and they could not be found because they were sealed by the court. However, counsel for Plaintiff argued that the Finnegan Declaration states that the sealed documents were lost.

In their respective post-hearing briefs, the parties agreed that, as a matter of law, documents that were placed under seal in Plaintiff's underlying criminal case are not subject to an FOIA

request.[5] Plaintiff nevertheless argued that the Defendants should advise the court and Plaintiff of the existence of any other sealed records that have not been produced and establish whether the records were sealed with the intent to prohibit the Government from disclosing them. (*See* Plaintiff's Post-Hearing Brief, Doc. No. 35 at p. 3, *citing Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197-98 (3rd Cir. 1991)).

The court concluded that Plaintiff was entitled to a clearer explanation of the sealed documents referenced in paragraph 71 of the Finnegan Declaration and ordered the EOUSA to a file a supplemental Declaration. (*See* Order, Doc. No. 43, pp. 3-4).

**(3) Second Hardy Declaration and Taylor Declaration**

In response to the court's Orders (set forth in Doc. No. 43), Defendants submitted the Second Declaration of **David M. Hardy** (Doc. No. 44-3) and the Declaration of **Sherrel E. Taylor**, Paralegal Specialist for the Civil Division, United States Attorney's Office for the Eastern District of New Orleans (Doc. No. 44-2).

In response to the Declaration of Sherrel E. Taylor (regarding the sealed documents referenced by the EOUSA), Plaintiff responds that:

---

[5] Plaintiff submitted that according to the Docket Sheet in his criminal case, one document was sealed by the court. Plaintiff "surmises that the sealed record is his pre-sentence investigation report" and he withdrew his request for that record. (*See* Plaintiff's Post-Hearing Brief, Doc. No. 35, p. 3).

> As to the sealed documents that were lost, Sherrell Taylor states that the Government has now located them and that the sealed documents include 6 pages of Judge Englehardt's statement of reasons for imposing sentence. The plaintiff has no basis to dispute this explanation.

(Plaintiff's Supp. Memo., Doc. No. 45 at p. 1).

In submitting the Second Declaration of David Hardy (i.e., the revised *Vaughn* Index from the FBI), the Government represents that:

> After speaking with counsel for the Plaintiff, it is understood that Plaintiff sought more detail as to the documents withheld in full by the FBI. Since the undersigned AUSA was not enrolled as counsel when the initial search was performed or when the pending motion for summary judgment was filed, it was imperative [to] recreate the search. After review of the documents withheld in full, it was determined that all documents withheld in full were duplicates already released in full or in part to the Plaintiff.

(Gov.'s Memo., Doc. 44-4, pp. 1-2; *see also* Second Declaration of Hardy, Doc. No. 44-3 at ¶4).

In his Second Declaration, Hardy notes that the actual number of pages withheld in full is 389. (See Second Hardy Declaration, Doc. No. 44-3 at p. 2, n. 1). The Second Declaration of David M. Hardy also incorporates a table containing a detailed listing of each duplicate page and corresponding page released to Plaintiff. (*Id.* at ¶6, pp. 3-7).

In response to Hardy's explanation that the documents withheld

were duplicates of documents already released to Plaintiff, Plaintiff argues that "neither the original FOIA responses from the FBI nor the appeal determinations by the Office of Information and Privacy ('OIP') make any reference to withholding duplicate pages, but instead the FOIA exemptions for the documents that were upheld." (Plaintiff's Memo., Doc. No. 45 at pp. 1-2, citations omitted). Plaintiff further argues that:

> both [OIP] decisions also state that the "FBI properly withheld certain information that is protected from disclosure under the FOIA pursuant to: ... 5 U.S.C. §552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, Rule 6(e) of the Federal Rules of Criminal Procedure)." If it is true that the only documents withheld were duplicates, then the OIP's reliance on Rule 6(e) does not make sense. Rule 6(e) prohibits disclosure of "a matter occurring before the grand jury." If OIP were truly relying on that exemption, it is unclear how any such matters could be released in a redacted from. (The plaintiff was not provided with any grand jury transcripts, redacted or otherwise). If the only documents withheld were duplicates of documents that were already released, then OIP's reliance on Rul 6(e) appears to be erroneous and inapplicable.

(*Id*. at p. 2, citations omitted).

However, the court rejects Plaintiff's arguments. The Government's Cross Motion for Summary Judgment, supported by David Hardy's Declaration attached thereto, specifically addresses federal grand jury information withheld pursuant to exemption 5

U.S.C. 552(b)(3)-1, in conjunction with Federal Rule of Criminal Procedure Rule 6(e). (*See* Doc. No. 20-2, at p. 18 & Hardy Declaration at ¶54).

Having reviewed each document that is specifically identified as a document the FBI protected pursuant to FOIA exemption (b)(3), the court concludes that not only was reliance on Rule 6(e) correct and appropriate, these documents can be released in redacted form and indeed were released in redacted form to Plaintiff pursuant o his FOIA request. (*See* documents attached in globo to Doc. No. 47, Government's Motion for Leave to Attach to Defendant's Reply Memorandum [Doc. No. 46], all previously submitted as a part of Attachment P to Hardy First Declaration).

The court concludes that Plaintiff has received all documents that he is entitled to receive pursuant to his FOIA requests.

## B.  Did the EOUSA fail to promptly make available records sought by Plaintiff?  "Moot."

By letter dated November 13, 2006, OIP advised Plaintiff's counsel that it was remanding his request (No. 03-3927) to the EOUSA for further processing of responsive documents. (*See* Complaint at ¶21 & Ex. L; & Finnegan Declaration, Gov's Ex. 3, Attachment P).

In his Motion for Summary Judgment (filed on September 21,

2007), Plaintiff argues that "i]t has now been more than ten months since OIP remanded Lippton's request to EOUSA and more than four years since plaintiff's FOIA request[,]" and thus, EOUSA is in gross violation of the twenty day determination period set forth in 5 U.S.C. §552(a)(6)(I).  (*See* Doc. No. 12-2, p. 9).

By letter dated October 30, 2007, EOUSA made a supplemental release of material in response to Plaintiff's request (No. 03-3927).  (*See* Finnegan Declaration, Gov's Ex. 3, Attachment Q). This release consisted of 169 pages of material, some of which was being released with excisions made pursuant to 5 U.S.C. §552(b)(2), b(5), b(6), b(7)(C) and 5 U.S.C. §552a(j)(2).  (*Id*.).

As discussed above, Plaintiff has now received all that he entitled to receive under his FOIA requests.  Thus,

> at this juncture ..., however fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.  Although "[t]here may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention," the case at bar does nor mandate such court action.  Under 5 U.S.C. §552(a)(4)(B), a federal court is authorized only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld...."  Thus, "[o]nce the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has

> already been made." We are not authorized to
> make advisory findings of legal significance
> on the character of the agency vis-vis any
> requester of information. In sum, if we are
> convinced that appellees have, however
> belatedly, released all nonexempt material, we
> have no further judicial function to perform
> under the FOIA.

*Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

## C.  Is Plaintiff entitled to Attorney's Fees?

### "No."

The version of the FOIA (at 5 U.S.C. §552(a)(4)(E)) in effect *before* December 31, 2007 provided that:

> The court may assess against the United States
> reasonable attorney fees and other litigation
> costs reasonably incurred in any case under
> this section in which the complainant has
> **substantially prevailed.** (emphasis added).

In Plaintiff's initial Opposition to the Government's Motion for Summary Judgment, Plaintiff argues that he has "substantially prevailed" and is therefore entitled to attorney's fees. Plaintiff cites the 5th Circuit case of *Cazalas v. U.S.*, 660 F.2d 612 (5th Cir. **1981**) in support of his argument that he has "substantially prevailed."

But *Cazalas* was decided *before* the Supreme Court issued its *Buckhannon* decision in **2001**.  In *Buckhannon Board and Care Home,*

*Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Supreme Court interpreted the term "prevailing party" in the fee-shifting provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.*, and the Americans With Disabilities Act of 1990, 42 U.S.C. ¶¶ 12101 *et seq.*

The *Buckhannon* Court rejected the catalyst theory under which several circuit courts had held that "a plaintiff is a 'prevailing party' if it achieves the desires result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon,* 532 U.S. at 601-01, 121 S.Ct. 1835. Instead, the Court held that a plaintiff is a prevailing party only if it has "received a judgment on the merits" or secured a settlement agreement enforced by a consent decree. *Id*. at 605, 121 S.Ct. 1835. Thus, a defendant's "voluntary change in conduct, although perhaps accomplishing what the plaintiffs sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* (italics in original).

In *Oil, Chemical & Atomic Workers International Union (OCAW) v. Dept. of Energy*, 288 F.3d 452 (D.C.Cir. 2002), the D.C. Circuit court first considered whether the *Buckhannon* holding applies to the FOIA fee provision. The *OCAW* court first found that the "substantially prevail" language in the FOIA is the functional

14

equivalent of the "prevailing party" language found in the statutes *Buckhannon* interpreted. Then the *OCAW* court applied the *Buckhannon* interpretation of "prevailing party" to the FOIA's attorney fee provision, holding that "in order for plaintiffs in FOIA actions to become eligible for an award of attorney fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *OCAW*, 288 F.3d at 455-57, *quoting Buckhannon*, 532 U.S. at 603, 121 S.Ct. 1835.

Other D.C. Circuit cases have similarly held that *Buckhannon* applies to FOIA cases. *See e.g., Davy v. Central Intelligence Agency*, 456 F.3d 162 (D.C. Cir. 2006); *Davis v. U.S. Dept. of Justice*, 460 F.3d 92 (D.C. Cir. 2006). And this court, itself, has also applied *Buckhannon* to a FOIA case: *McBride v. U.S. Dept. of Army*, 2007 WL 1017328 (E.D.La. March 30, 2007).

Here, Plaintiff received documents he requested from the Defendants *after* filing suit and a motion for summary judgment. But the Government initially produced the requested documents without any order from this court. Thus, while the Plaintiff may have "achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," *Buckhannon,* 532 U.S. at 601-01, 121 S.Ct. 1835, the Government's "voluntary change in conduct, although perhaps accomplishing what the plaintiff[] sought to achieve by the lawsuit, lacks the necessary judicial

*imprimatur* on the change." *Id*. at 605, 121 S.Ct. 1835 (italics in original).

Further, while the court did issue Orders in this case ordering the FBI to file a more detailed *Vaughn* index, identifying and describing each document withheld by the FBI, <u>and</u> ordering the EOUSA to file a supplemental declaration regarding sealed documents (referenced in the Finnegan Declaration), the court finds that (after reviewing the Second Hardy Declaration and the Taylor Declaration, together with the First Hardy Declaration and Finnegan Declaration), Plaintiff *received clarification* of documentation that the Defendants had already provided to him, but he *was not entitled to any additional documents* than those that were provided without any order from this court. Thus, the court concludes that Plaintiff has not "substantially prevailed" within the meaning of the FOIA attorney fee provision and the D.C. Circuit jurisprudence interpreting same, and thus he is ineligible for attorney fees.[6]

---

[6] A FOIA plaintiff who "substantially prevail[s]" becomes ***eligible*** for attorney's fees. But whether the plaintiff is actually ***entitled*** to a fee award is a separate inquiry that requires the court to consider four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding. *Edmonds*, 417 F.3d at 1327; *Davy*, 456 F.3d at 166; *State of Texas v. Interstate Commerce Commission*, 935 F.2d 728, 730 (5th Cir. 1991).

Here, the court does not address the second step of whether plaintiff is ***entitled*** to attorney's fees, because the court has found that plaintiff is ***ineligible*** for attorney's fees since he has not substantially prevailed. However, even if Plaintiff was eligible for attorney's fees, a consideration of the factors listed above show that he is not entitled to attorney's fees. Given Plaintiff's criminal history, Plaintiff's FOIA requests were strictly personal requests, garnering no public benefit; and the FBI and EOUSA have processed and released all reasonable segregable, non-exempt information from the records responsive to Plaintiff's requests.

## D. New attorney fee provision of the FOIA is not applicable here because that provision was effective December 31, 2007 and the court finds that it is not retroactive.

The *new* FOIA attorney fee provision (5 USC §552 (a)(4)(E)) provides:

> (E)(i) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed. (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either–
>
> (I) a judicial order, or an enforceable written agreement or consent decree; or
>
> (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

This provision was effective December 31, 2007. For the reasons expressed by the United States District Court (Western District of Missouri, Southern Division) in *Zarcon, Inc. v. National Labor Reasons Board* (copy attached to the Government's Memorandum re: attorney's fees, Doc. No. 30), the court finds that the modifications of the FOIA attorney's fee provision are **not retroactive**. The *Zarcon* court and this court find that application

of the Supreme Court's analysis in *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006), mandates such a conclusion because:

(1) the amended FOIA statute (effective December 31, 2007) does not provide any evidence that Congress intended the statute to be retroactive; and

(2) here, Plaintiff sent his FOIA requests to the FBI and the Department of Justice in June 2003. Plaintiff filed suit on January 16, 2007.

Further, Plaintiff filed his Motion for Summary Judgment on September 21, 2007.  The Government filed its Cross-Motion **(with the production documents)** on December 18, 2007.  **All of this occurring when the former FOIA fee provision applied (i.e. before December 31, 2007).**  Thus, applying the amended FOIA attorney fee provision retroactively to the Government Defendants in this case would have "a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its enactment]."  *Zarcon* at p. 4, *quoting Fernandez-Vargas v. Gonzales*, 548 U.S. 20, 126 S.Ct. 2422, 2428 (2006).

### **E.   CONCLUSION**

For reasons set forth above,

**IT IS ORDERED** that Plaintiff's **"Motion for Summary Judgment"** be and is hereby **DENIED**, because Plaintiff has received all of the information to which he is entitled under his FOIA request, and Plaintiff is ineligible to attorney's fees under the FOIA.

**IT IS FURTHER ORDERED** that the Government's **Cross Motion for Summary Judgment** be and is hereby **GRANTED.**

New Orleans, Louisiana, this **27th** day of **June**, **2008**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE